**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
SHIKEMA WILLIAMS, administratrix of the
estate of FREDERICK VELEZ, CHRISTINE
COX, FREDERICK HALL, and SHAMIA
HALL, by her mother and natural guardian,
SABRINA HALL,

Plaintiffs,

- against -

SUPERINTENDENT SUSAN CONNELL, *et al.*,

Defendants.

-----------------------------------------------------------X

**MEMORANDUM & ORDER**

12 Civ. 3593 (SLT) (VVP)

**TOWNES, United States District Judge,[1]**

On April 20, 2012, Plaintiffs initiated this Section 1983 action in New York State

Supreme Court, Kings County ("Kings County").  On July 19, 2012, a majority of the

Defendants filed or consented to a notice of removal in this Court, and all Defendants not a party

to that notice later consented to removal in writing.  Defendants later filed a motion to transfer

the action to the Northern District, and Plaintiffs cross-moved for remand.  (ECF Nos. 23 & 25).

Because Plaintiffs' arguments for remand are meritless, and because transfer is in the interests of

justice and would increase convenience to the majority of witnesses and parties, Plaintiffs'

motion is **DENIED** and Defendants' motion is **GRANTED.**


I. BACKGROUND

This case arises from the death of Frederick Velez ("Velez" or the "Decedent"), an

inmate at Oneida Correctional Facility ("Oneida" or the "Oneida Facility") who died as a result

---

[1]  The Court is grateful for the work performed on this case by our intern Joshua Garland, student at the Fordham
University School of Law.

of a fight with another inmate in April of 2009. (First Am. Compl. ("FAC"), ECF No. 36, at 1-2). Plaintiffs are the Decedent's relatives and the representative of his estate. (*Id.*) The named defendants, sued only in their individual capacities, are seventeen New York State Department of Corrections ("NY-DOCS") employees, including the former Oneida Superintendent, the former Deputy Superintendent, and various correctional officers. (FAC at 1-14). Plaintiffs base their section 1983 claims on violations of the Decedent's 8th and 14th Amendment rights, alleging that Defendants acted with deliberate indifference in causing his death by failing to supervise the inmate who stabbed him and by needlessly delaying medical treatment. (*Id.* at 1-2, 23-31).[2]

Plaintiffs initiated this suit in Kings County two months after Velez's death. It is undisputed that Plaintiffs sent all named Defendants a summons and complaint, two copies of a statement of service and a statutory acknowledgement of receipt form, and return envelopes, postage prepaid, in an effort to effect service NY CPLR § 312-a, which is effectively New York's waiver of service provision.[3] (Declaration of Ameer Benno ("Benno Decl."), Ex. 2, ECF No. 28-2.) The parties dispute, however, when service was effected (and removal deadlines therefore triggered) on two Defendants, Captain Earl Bell ("Bell") and Corrections Officer Leslie Bailey ("Bailey").

Plaintiffs' filings show that Plaintiffs' attorney mailed the relevant materials, including the aforementioned CPLR 312-a acknowledgment form, by United States Postal Service ("USPS") first-class mail to Defendant Bailey on June 29, 2012, and to Defendant Bell on July 2 of the same year. (Benno Decl., Ex. 2). USPS confirmation sheets show that the delivery

---

[2] Plaintiffs previously brought a separate action, *Shikema Williams, et al. v. The State of New York*, M-81432, in 2012 against the State of New York in the Court of Claims in Oneida County. (*See* First Declaration of Neil Shevlin, ("1st Shevlin Decl') ECF No. 25 ¶4).

[3] *See* Siegel, N.Y. Prac. § 76A (5th ed.) (explaining that CPLR 312-a was modeled on former Fed. R. Civ. P. 4(c)(2)(C)(iii), the precursor to the waiver of service provisions now in place under the federal rules.)

addressed to Bailey, "c/o Green Correctional Facility," was delivered to a P.O. Box on July 2, 2012. (Benno Decl., Ex. 3). Another confirmation sheet shows that delivery addressed to Bell, "c/o NY DOCS," was delivered on July 15. (Benno Decl., Ex. 4).

On July 19, Assistant New York Attorney General Neal Shevlin ("Shevlin") filed a notice of removal on behalf of seven named defendants, not including Bell or Bailey. (Notice of Removal, ECF No. 1). Plaintiffs do not contest that those seven defendants had by that time signed and returned the NY CPLR 312-a acknowledgement and receipt form to Plaintiffs' counsel within the prior thirty days. Five days later, Shevlin filed a declaration of service on Plaintiffs' Counsel, stating in a footnote that the "Office of the Attorney General anticipates representing all named defendants once they have requested representation." (*See* Declaration of Service, ECF No. 2). The same day he also filed with this Court a "Declaration of Filing," attesting under oath that he had caused to be filed "with the King's County Clerk defendants' NOTICE OF FILING OF NOTICE OF REMOVAL" and included a stamped-received copy. (ECF No. 4).

On July 25 Shevlin wrote to Plaintiffs' lead counsel, Ameer Benno, stating that he had received requests for representation from all but two defendants, Bailey and Bell. (Declaration of Neil Shevlin ("Shevlin Decl."), Ex. K, ECF No. 30-11). Regarding those two, he explained:

> It is my understanding that Capt. Bell is on vacation, so presumably we will hear from him when he gets back. As for Mr. Bailey, the Inmate Records Coordinator at Greene Correction Facility informed me that Bailey has not yet received the complaint in this case.

(*Id.*).

One day later, on July 26, 2012, Shevlin filed a Notice of Appearance on behalf of eight of the ten remaining defendants, leaving only Defendants Bell and Bailey unrepresented and thus far non-responsive to the purported service of process for the state action. (ECF No. 5). That

same day he filed a Notice of Consent to Removal on behalf of the same eight defendants. (ECF No. 6). Thus, as of July 26 all named defendants except Bell and Bailey had either been party to the July 19 Notice of Removal or consented to removal. Again, Plaintiffs do not dispute that each of those parties either joined the July 19 notice of removal or consented to it not more than 30 days after signing and returning their CPLR 312-a acknowledgement forms.

Rather, Plaintiffs base their argument for remand on the timeliness of the responses to their efforts to serve Defendants Bailey and Bell. Defendant Bailey, who according to Shevlin's email had not yet received the process sent to him "c/o Green Correctional Facility," evidently received it shortly afterwards and signed and returned his CPLR 312-a acknowledgment form on July 25, six days after his codefendants removed the action. (Shevlin Decl., Ex. G). Shevlin then filed a Notice of Appearance and a Notice of Consent to Removal on Bailey's behalf on August 6. (ECF Nos. 8-9).[4] One day later, on August 7, 2012, Defendant Bell, apparently having returned from vacation, signed and returned his CPLR 312-a form, nineteen days after removal. (Shevlin Decl., Ex. I). Shevlin appeared on his behalf and filed his Notice of Consent to Removal the same day. (ECF Nos. 11-12).

On November 27, 2015, Defendants moved to transfer the case to the Northern District of New York, where the underlying events took place. (ECF No. 23). Plaintiffs opposed that motion and filed a cross-motion to remand, contending that Defendants Bell and Bailey's belated consent rendered removal untimely. (ECF Nos. 26-27). The Court addresses those motions in reverse order below.

---

[4] These documents were executed on Friday, August 3, 2012, but docketed on Monday, August 6, 2012. For reasons discussed below, this discrepancy is irrelevant to the issues here.

4

## II. DISCUSSION

### A. Motion to Remand

"Removal jurisdiction must be strictly construed, both because the federal courts are courts of limited jurisdiction and because removal of a case implicates significant federalism concerns." *In re NASDAQ Market Makers Antitrust Litigation*, 929 F. Supp. 174, 178 (S.D.N.Y.1996), (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 109 (1941)). Further, "the burden is on the removing party to prove that it has met the requirements for removal." *Codapro Corp. v. Wilson,* 997 F. Supp. 322, 325 (E.D.N.Y.1998).

Removal of actions to federal court is governed by 28 U.S.C. § 1441, which provides that "[a]ny civil action brought in a State court of which the district courts of the United States, have original jurisdiction, may be removed by the defendant . . . to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). 28 U.S.C. § 1446(b) sets forth the procedural requirements. As relevant here, that section imposes distinct but related timeliness and consent requirements. Regarding timeliness, the statute provides:

> notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, *through service or otherwise*, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

28 U.S.C. § 1446(b)(1) (emphasis added).

Subsection (b)(2)(A) of the statute also requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action." This consent

requirement, prior to its codification at Section 1446(b) by the Federal Courts Jurisdiction and

Venue Clarification Act of 2011 (the "FCJVCA"), Pub.L. No. 112–63, 125 Stat. 758, has long

been known as the "rule of unanimity." *See, e.g., Bradford v. Harding*, 284 F.2d 307, 309 (2d

Cir.1960) (recognizing that "all the defendants must join in seeking removal."); H.R. REP. NO.

112–10, at 13–14 (2011), 2011 U.S.C.C.A.N. 576 ("new subparagraph (b)(2)(A) codifies the

well-established 'rule of unanimity' for cases involving multiple defendants.")

   As the statutory language makes clear, the rule of unanimity only applies to "defendants

who have been *properly joined and served*" at the time of the notice of removal. 28 U.S.C. §

1446(b)(2)(A) (emphasis added). Unsurprisingly, courts therefore recognize that the consent

requirement imposed by section 1446(b)(2)(A) only applies to defendants who have been

"properly served" at the time of removal. *See, e.g., Baiul v. William Morris Agency, LLC*, No.

13 CIV. 8683 KBF, 2014 WL 465708, at *2 (S.D.N.Y. Feb. 3, 2014) (The rule "only applies,

however, to parties that have been properly served."); *Johnson v. Rock*, No. 9:14-CV-815

DNH/ATB, 2014 WL 7410227, at *7 (N.D.N.Y. Dec. 31, 2014) (same). This "exception" to the

rule of unanimity is firmly established, and has been consistently applied both before and after its

codification in Section 1446 by the FCJVCA. *See, e.g., Baiul*, supra; *James v. Gardner*, No.

CIVA04CIV1380DGTKAM, 2004 WL 2624004, at *2 (E.D.N.Y Nov. 10, 2004) (recognizing

that consent is not required from "defendants [who] have not been served with service of process

at the time the removal petition is filed."); *Varela v. Flintlock Const., Inc.,* 148 F.Supp.2d 297

(S.D.N.Y.2001) (same).

   Here, the parties dispute whether removal was proper in light of the dates on which

Defendants Bell and Bailey filed their Notices of Consent to Removal. Plaintiffs broadly argue

that removal itself—rather than consent—was untimely because both Bell and Bailey had only

30 days from the date of their respective USPS deliveries in which to consent to removal or remove themselves. (Pl.'s Memo, ECF No. 27 at 5-12). As elaborated below, this argument rests on egregious misstatements of law, mischaracterizes the issue as jurisdictional rather than procedural, and otherwise lacks any trace of merit. The Court concludes that neither defendant needed to consent to removal because service was not complete as to either at the time their codefendants filed the notice of removal.

It is by now black-letter law that state law determines whether service is complete for the purposes of section 1446. Indeed, in light of *Murphy Brothers., Inc. v. MichettiPipe Stringing, Inc.,* 526 U.S. 344 (1999), courts consistently look to state law to determine whether a defendant was "properly served" when evaluating procedural challenges to a Defendant's removal. *See, e.g., Fed. Ins. Co. v. Tyco Int'l Ltd.,* 422 F. Supp. 2d 357, 384 n.16 (S.D.N.Y. 2006) ("[A]fter *Murphy Brothers,* proper service of process under state law is required to trigger a defendant's removal obligations.") (quoting *In re Pharmaceutical Indus. Average Wholesale Price Litig.,* 307 F.Supp.2d 190, 195 (D. Mass. 2004)); *see also Weiss v. Glemp,* 792 F. Supp. 215, 224 (S.D.N.Y.1992) ("In determining the validity of service prior to removal, a federal court must apply the law of the state in which the service was made."). In *Murphy Brothers,* the Supreme Court held that the 30-day removal period is only triggered after completion of "formal service," notwithstanding the language in Section 1446 that defendants must remove within thirty days of the defendant's receipt of a complaint or summons "through service or otherwise". 526 U.S. at 347-48. In so holding, the Court emphasized that any contrary ruling would jettison the "longstanding tradition in our system of justice . . . fundamental to any procedural imposition on a named defendant . . . [that in] the absence of service of process (or waiver by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant." *Id.* at

350. Accordingly, courts interpret *Murphy Brothers* as holding that service is neither "formal" nor "complete" for the purpose of triggering a defendant's removal obligations unless that service was perfected and gave rise to state court jurisdiction as determined by state law. *See, e.g.*, *Piacente v. State Univ. of New York at Buffalo*, 362 F. Supp. 2d 383, 388 (W.D.N.Y. 2004) (the 30-day removal period only begins after "service is completed and jurisdiction over the defendant has been obtained.") (quoting *Ward v. Aetna Life Ins. Co.*, No. 03–CV–0672E, 1999 WL 222559, at *1 (W.D.N.Y. 1999); *Stop & Shop Supermarket Co. LLC v. Goldsmith*, No. 10-CV-3052 KMK, 2011 WL 1236121, at *5 (S.D.N.Y. Mar. 31, 2011) ("New York state law will determine whether a defendant has been 'properly ... served for purposes of th[e] rule [of unanimity]."); *cf. Vistra Trust Co. v. Stoffel*, No. 08CIV.2844(NRB), 2008 WL 5454126, at *7–8 (S.D.N.Y. Dec. 29, 2008) (holding that defendant entity was not "properly served" and therefore had no obligation to consent to removal in absence of showing that individual who received process had requisite control of entity as required under CPLR section 311.)

Here, service was not complete as to either Bell or Bailey at the time of removal. The plain language of CPLR 312-a provides that "[s]ervice is complete on the date the signed acknowledgement of receipt is mailed or delivered to the sender" and that "[t]he signed acknowledgement of receipt shall constitute proof of service." NY CPLR 312-a(b)(1). Consistent with that plain language, every authority interpreting this provision has determined that service is incomplete and jurisdiction is lacking until the requisite acknowledgement form is returned. *See Richard A. Hellander, M.D., P.C. v. Metlife Auto & Home Ins. Co.*, 15 N.Y.S.3d 537 (2d Dep't 2015) (no jurisdiction in absence of acknowledgment form); *Ward*, supra, at *1 (service not complete under CPLR 312-a and removal period not triggered until execution and return of acknowledgment form); *New York Med. Rehab., P.C. v. Travelers Ins. Co.*, 971

N.Y.S.2d 645, 647 (2d Dep't 2013) (stating that "no action had been commenced" in absence of acknowledgement form); *Jefferson Heights Quarry, Inc. v. Fort Pike Assoc.*, 616 N.Y.S.2d 839, 839 (4th Dep't 1994) (court has no jurisdiction until CPLR § 312-a acknowledgement form is returned to the sender.)

The seven removing defendants here filed their notice of removal on July 19, 2012. (ECF No. 1). Neither Bell nor Bailey had by that time signed or returned their acknowledgment form. Bailey completed and returned his acknowledgment form six days later, on July 25. (Shevlin Decl., Ex. G). Bell returned his nearly nineteen days later, on August 7. (Shevlin Decl., Ex. I). As a result, "proper" service was not completed on either Defendant at the time of removal, state court jurisdiction was therefore lacking, and their consent was not required under section 1446. *See, .e.g., Newkirk v. Clinomics Biosciences, Inc.*, No. 1:06CV0553(GLS/RFT), 2006 WL 2355854, at *4 (N.D.N.Y. Aug. 15, 2006) ("[A] defendant not subject to state court jurisdiction through proper service of process at the time of removal is excused from the unanimity requirement."); *Smith v. FCM–MTC Medical*, LLC, 2011 WL 320978, 1 (E.D.Va.2011) (Service may be completed post-removal on non-consenting defendants who had not been served in the state proceeding, but those defendants' statutory right to move to remand under 28 U.S. § 1448 confers no rights upon a plaintiff.)

In arguing to the contrary, Plaintiffs' counsel conflates the consent requirement with timeliness of removal, misstates the most basic tenets of law governing removal, and cites irrelevant authorities. To begin with, he contends without qualification that "in cases with multiple defendants, the 30-day time limit begins to run when the first defendant is served," citing *Varela v. Flintlock Construction, Inc.*, 148 F. Supp. 2d 297, 299 (S.D.N.Y. 2001), and thereby asserts what was once known as the "first-served defendant" rule, which he implies is

"majority rule." (ECF No. 27 at 7). That rule, aside from being inapposite, is contrary to statutory law. The "later-served defendant" rule—the exact opposite—is now codified in the governing statute, 28 U.S.C.A. § 1446(b)(2)(B). *See, e.g., Pietrangelo v. Alvas Corp.*, 686 F.3d 62, 64 (2d Cir. 2012) (recognizing that the FCJVCA "codifie[d] the later-served rule" and holding that the first-served defendant rule did not apply to cases initiated before that statute took effect). Perhaps recognizing the invalidity of this rule statement, counsel did not actually apply it. Instead he misstates other law.[5] That is, he next contends that both Bailey and Bell had 30 days from the date they "received, 'through service or otherwise,' a copy of some document giving notice that the case is removable[,]" essentially arguing that the removal statute's plain language conditions the removal period on receipt of process by any means, regardless of completion of service. (ECF no. 27 at 8) (citing 28 U.S.C. 1446(b))[6]. That may be a reasonable interpretation of section 1446(b), considering that it ostensibly conditions commencement of the thirty-day period on receipt of the complaint through service "or otherwise," but it is also directly contrary to the Supreme Court's reasoning in *Murphy Brothers* and most if not all cases addressing removal periods thereafter. *See, e.g., Stop & Shop Supermarket Co.*, at *5 ("[A]fter [*Murphy Bros.*,], proper service of process under state law is required to trigger a defendant's removal obligations.") (citations and quotation marks omitted); *Piacente*, 362 F. Supp. 2d at 388) ("[U]nder *Murphy Bros.*, 'the time for removal commences when service is completed and jurisdiction over the defendant has been obtained.' ") (quoting *Ward* at *1); *Joshi v. K-Mart Corp.*, No. CIV.A. 06-5448(JLL), 2007 WL 2814599, at *3 (D.N.J. Sept. 25, 2007) (return of

---

[5] It is puzzling that counsel would assert this rule without applying it to facts. To the extent this maneuver was meant to vaguely imply that removal was untimely because it violated the first-served defendant rule, it is obviously without merit.

[6] This is very section that codified the later-served defendant rule.

acknowledgement form required by New Jersey's waiver of service statute has the "practical effect" of the "proper service" needed to confer jurisdiction and thereby triggers the removal period under *Murphy Brothers*.)

Separately, in repeating the contention that service need not be complete in order to trigger removal obligations, counsel's reply brief argues that state law must be ignored when evaluating timeliness of removal. (ECF No. 31 at 4-5). Specifically, he purports to quote Wright & Miller in asserting:

> it is now settled law that the time for seeking removal begins to run only when the defendant or an agent in fact receives the process. Technicalities of state law as to the completion of service of process are ignored, just as state law generally is disregarded, when removal is considered.

(*Id.*) (quoting a source purportedly found with the citation "14A Wright, Miller, Cooper, *Federal Practice & Procedure 2d* § 3732, at 516") (emphasis omitted). Whatever the source of that quote may be (presumably a prior version of Wright & Miller's esteemed treatise), the proposition asserted is incorrect. Indeed, the current edition of Wright & Miller provides exactly opposite:

> Prior to the *Murphy Brothers* decision, the Fifth and Seventh Circuits had ruled that informal service of the complaint was enough to trigger the removal period, and that the court could ignore service of process technicalities of state law in determining when defendants' time to remove began to run. However, given the Supreme Court's rejection of the Fifth and Seventh Circuits' decisions regarding the triggering mechanisms for the removal period [in *Murphy Bothers*], *state law governing formal service of process now must be followed to protect defendants' interests.* Justice Ginsburg, writing for the Court, concluded that Judge Easterbrook's interpretation of the "or otherwise" phrase of Section 1446(b) as dispensing with formal service requirements had been misguided. After a thorough review of the significance of proper service in the judicial system, Justice Ginsburg noted that "[n]othing in the legislative history of the 1949 amendment so much as hints that Congress, in making changes to accommodate atypical state

11

commencement and complaint filing procedures, intended to dispense with the historic function of service of process as the official trigger for responsive action by an individual or entity named defendant." Thus, earlier cases holding that the plaintiff gives the notice called for by the statute when the plaintiff makes a bona fide effort to serve the defendants with the complaint or summons, and implying that informal or flawed service could satisfy the statutory notice requirement, are no longer are good law.

Charles Alan Wright et al., 14C Fed. Prac. & Proc. Juris. § 3731 (4th ed. 2009) (emphasis added) (citations omitted).

In any event, apart from the above misstatements of law, Plaintiffs' argument that removal was untimely is based on inapposite facts. The entire argument rests on the dates Bell and Bailey provided consent. Those dates, however, are irrelevant to the timeliness of the *notice of removal.* In other words, Plaintiffs confuse the rule of unanimity with the timeliness of removal—they conflate the 30 day requirement for filing notices of removal under 28 U.S.C. § 1446(b)(1) with the rule of unanimity codified at 28 U.S.C. § 1446(b)(2)(A) without explanation. The dates of Bell and Bailey's consent are irrelevant to the timeliness of filing a notice of removal. Rather, as explained above, their consent to removal was neither untimely nor even necessary because service was not complete as to either at the time the notice of removal was filed. In short, "a defendant not subject to state court jurisdiction through proper service of process at the time of removal is excused from the unanimity requirement." *Newkirk*, 2006 WL 2355854, at *4.

In a footnote, Plaintiffs argue in passing that the case should be remanded because the Defendants violated 28 U.S.C. 1446(d), which requires removing parties to promptly file a notice of removal in state court. (ECF No. 27 at 12, n. 5). Plaintiffs base this argument on the factual contention that "Defendants did not file their [notice] with the State [sic] court until August 31, 2012 – approximately 6 weeks after filing their Notice of Removal" in this Court. (*Id.*) In

support, they cite *Manufacturers & Traders Trading Co. v. Harford Accident & Indemnity Co.*, 434 F. Supp. 1053, 1055 (W.D.N.Y 1977) for the proposition that "1446(d) provides an independent basis" for remand. This argument fails for two reasons. First, it blatantly ignores that Shevlin filed a "Declaration of Filing" with this court that (i) attested under oath that a notice of removal was manually filed in state court on July 20, the day after the case was removed, and (ii) attached a stamped-received copy from that court. (ECF No. 4). Plaintiffs do not dispute a notice was manually filed in state court, and the Court sees no reason to doubt Shevlin's declaration. Rather, Plaintiffs simply overlook this filing and misdirect attention towards a second, redundant filing made on the state court's electronic docket several weeks later. (*See* Shev. Decl. ¶ 10 (explaining that the state court requested the second notice be filed electronically.)) Second, even if the notice in state court were filed on August 31, remand would not be proper. Indeed, in the case cited by Plaintiffs the court denied remand and noted that "filing of a copy of the petition for removal is a procedural and ministerial act, failure of which does not defeat the federal court's jurisdiction." 434 F. Supp. at 1055. In performing independent research, this Court, like Plaintiffs, has found no decisions from any jurisdiction remanding for a delay in filing notice of removal in state court. *See, e.g., Whitney v. Wal-Mart Stores, Inc., No.*, CIV.04-38-P-H, 2004 WL 1941345, at *1 (D. Me. Aug. 31, 2004) ("None of the cases cited by the parties suggests that federal jurisdiction turns on 1446(d) as opposed to 1446(a).")

Accordingly, the Court concludes that removal was procedurally proper and Plaintiffs' Motion to Remand must be **DENIED**.

**B. Motion to Transfer**

Defendants have moved to transfer under 28 U.S.C. § 1404 , which provides that "[f]or the convenience of parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." "[T]he purpose of the section is to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (quoting *Continental Grain Co. v. Barge F.B.L.-585*, 364 U.S. 19, 26-27 (1960).

A motion to transfer presents a two-step inquiry. First, the Court must determine whether the action "might have been brought" in the forum to which the movant seeks transfer. If so, the Court must then resolve whether "the convenience of the parties and witnesses" and the "interests of justice" warrant transferring the case. *See* 28. U.S.C. § 1404(a); *Williams v. Swack*, No. 12–cv–1552 (CBA), 2013 WL 5423791, at *3 (E.D.N.Y. Sept. 26, 2013). In determining the second prong, courts consider, "*inter alia*: (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties." *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010) (citation and quotation marks omitted). "Some courts have [considered] additional factors, including (1) 'the forum's familiarity with the governing law,' and (2) 'trial efficiency and the interests of justice, based on the totality of the circumstances.' " *Scherillo v. Dun & Bradstreet, Inc.*, 684 F. Supp. 2d 313, 318 (E.D.N.Y. 2010) (quoting *Glass v. S & M NuTec*, 456 F.Supp.2d 498, 501 (S.D.N.Y. 2006). The movant seeking transfer must show by clear and convincing evidence that such factors merit transfer, *see Lafarge*, 599 F.3d at 114,

which lies within the "broad discretion of the district court [as] determined upon notions of convenience and fairness on a case-by-case basis[,]" *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 117 (2d Cir. 1992) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108) (1988)).

Here, Plaintiffs do not and cannot dispute that the case could have been brought in the Northern District of New York. *See* 28 U.S.C. § 1331 (providing for federal question jurisdiction); 28 U.S.C. § 1391 (providing that venue is proper where any defendant resides and where a substantial part of the acts or omissions giving rise to a claim occurred). Rather, they contend that Defendants have not met their burden of proving that transfer is required "for the convenience of the parties and witnesses" and in "interests of justice." In light of the factors discussed below, the Court concludes otherwise.

### 1 *Weight Accorded to Plaintiff's Choice of Forum.*

Traditionally, "[a] plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *Royal Ins. Co. of Am. v. United States,* 998 F.Supp. 351, 353 (S.D.N.Y.1998) (citations omitted). However, the weight accorded to this factor is "significantly diminished" where none of the operative facts occurred in the forum chosen by plaintiff. *See, e.g., Scherillo v. Dun & Bradstreet, Inc.,* 684 F. Supp. 2d 313, 328 (E.D.N.Y. 2010) (collecting cases); *Ahmed v. T.J. Maxx Corp.*, 777 F. Supp. 2d 445, 451 (E.D.N.Y. 2011) ("courts generally accord less deference to a plaintiff's choice of forum when the forum does not have a strong connection with the locus of the operative facts."); *Mitsui Marine and Fire Ins. Co. Ltd. v. Nankai Travel Intern. Co., Inc.*, 245 F. Supp. 2d 523, 525 (S.D. N.Y. 2003) (same). Moreover, a plaintiff's choice of forum is given "relatively little deference" when a case originally brought in state court is removed by defendants to the transferee court. Wright & Miller § 3848; *see also U.S.O. Corp. v. Mizuho Holding Co.*, 547

F.3d 749, 752–753 (7th Cir. 2008) (removal of an action limits the weight afforded to a plaintiff's choice of forum.) Accordingly, this factor weighs minimally, if at all, against transfer, because all of the operative facts took place at Oneida, in the Northern District, and because the case arrived in this forum as a result of Defendants' removal and not Plaintiffs' choice.

### 2. Convenience of the Witnesses

The convenience of the witnesses is generally the most important factor in the transfer analysis. *See, e.g., DLJ Mortgage Capital, Inc. v. Cameron Fin. Group, Inc.,* No. 07 Civ. 3746(LAP), 2007 WL 4325893, at *5 (S.D.N.Y. Dec. 4, 2007) ("[T]he convenience of witnesses is typically the most important factor in a motion pursuant to § 1404(a)."); *see also Viacom Int'l, Inc. v. Melvin Simon Prods.,* 774 F.Supp. 858, 868 (S.D.N.Y.1991) ("The core determination under § 1404(a) is the center of gravity of the litigation, a key test of which is the convenience of witnesses.") (citations omitted). It is not simply the number of witnesses that determines this factor, but "the materiality of their anticipated testimony." *Schwartz v. Marriott Hotel Servs., Inc.,* 186 F. Supp. 2d 245, 249 (E.D.N.Y. 2002) (citations and quotation marks omitted). Thus, a movant "must identify clearly the key witnesses and their expected testimony." *Swack*, supra, at *4.

Here, the parties dispute four categories of witnesses identified by the movant-defendants: medical personnel, prison personnel, state investigators, and other inmates. (ECF No. 24 at 5-7; ECF No. 27 at 15-16). Regarding medical personnel, the Defendants did not identify specific individuals who treated the Decedent. Rather, they more generally emphasize that the location of his treatment was the Rome Memorial Hospital in the Northern District, where the transporting ambulance company is based as well. They also identify the doctor who

performed the autopsy and place his business address in the Northern District. (ECF no. 24 at 5). Regarding prison employees and investigative personnel, the Defendants identify numerous potential witnesses, from both New York State Police and the NY DOCS Investigator General's Office, who investigated Velez's death. (ECF No. 25 at ¶¶ 10-13). Finally, regarding potential inmate witnesses, Defendants admit that they are now "scattered throughout the state" and specifically identify several, two of whom have been paroled and now reside in the Southern District of New York, one of whom has been released and resides in the Western District, and one of whom now resides in this district. (ECF No. 24 at 9).

In response, the Plaintiffs argue that the Defendants have not identified witnesses with sufficient specificity to meet their burden and contend that it is "impossible to know" how many witnesses either party will call, where those witnesses reside, and the materiality of their forthcoming testimony. (ECF No. 27 at 14). Yet, Plaintiffs nevertheless contend that the convenience of two of its "eye witnesses" (two of the former prisoners now paroled in the Eastern and South Districts of New York), is paramount to that of any potential defense witnesses and that this factor therefore weighs against transfer. (ECF No. 27 at 16).

The Court concludes that the overall convenience of the witnesses weighs strongly in favor of transfer. Although the Defendants did not specifically identify *every* witnesses in each category, they identified a sufficient number of witnesses whose testimony, it cannot be doubted, will be material to the deliberate indifference of the individual defendants. To the extent the Defendants identify only the location of employment and not the residence of otherwise unidentified witnesses in the Northern District, they have nevertheless met their burden on this factor. While not beyond certainty, the likelihood of their residence in the Northern District is sufficient to shift this factor in favor of transfer. *See Swack*, 2013 WL 5423791, at *5 (noting in

a similar action the high likelihood that unidentified nurses in transferee district would provide material testimony and "assuming," based on place of employment, that prison guards in the transferee district resided there and would provide material testimony.) On the whole, the balance of convenience to the multitude of witnesses in the Northern District outweighs that of the sole former inmate residing in the Eastern District. Further, all but one witness residing outside of the Eastern District (the former inmate residing in the Southern District) would be equally inconvenienced by travel to either this or the Northern District. Finally, it is likely that the related state court action in the northern district—in which discovery began as early as last year—has and will direct the same witnesses to that forum. *See* ECF No. 25, at 2 (describing the state action in the Northern District); *see also Brown v. New York*, 947 F.Supp.2d 317 (E.D.N.Y.2013) (holding that existence of a related federal action in the transferee district weighs heavily in favor of transfer of venue.) This factor therefore weighs strongly towards transfer.

Plaintiffs' arguments to the contrary are unpersuasive. The observation that it is "impossible to know" which witnesses will ultimately be called is true in virtually every case. Indeed, if completion of discovery and a final witness roster were required in every instance, transfer would rarely if ever increase convenience and efficiency. *Cf. Tarver v. Colonial Life & Acc. Ins. Co.*, 294 F. App'x 873, 878 (5th Cir. 2008) (affirming denial of transfer because, *inter alia*, the parties had already engaged in discovery at the time of the transfer motion.)


3. *Convenience of the Parties*

"A transfer of venue should not merely shift the burden of inconvenience from one party to another." *Schwartz*, 186 F. Supp. 2d at 250. Nevertheless, the sum of the comparative

burdens born by each party is appropriately considered. *See, e.g., Swack*, 2013 WL 5423791, at *5 (finding that the convenience of four defendants outweighed that of one plaintiff).[7]

This factor clearly favors transfer here. Of the sixteen named defendants, twelve work in the transferee district, three in the Western District, and one in South Carolina. (ECF No. 24 at 7). In contrast, only one of the four Plaintiffs lives in the Eastern District, another lives in the Southern District of New York, and two live in Tennessee. (*Id.*). Thus, of the twenty individual parties, only two would find any relative convenience in the instant forum. Twelve others presumably reside near their work in the Northern District, and the remainder would be inconvenienced equally by litigation there, if not less. And, once again, there can be no doubt that convenience will be facilitated for all involved by the previously initiated discovery in the state action there.

### 4. *The Locus of Operative Facts*

The locus of operative facts is an important factor to be considered in deciding whether a motion to transfer should be granted. *See, e.g., G. Angel Ltd. v. Camper & Nicholsons USA, Inc.*, No. 06 Civ. 3495(PKL), 2008 WL 351660, at *4 (S.D.N.Y. Feb. 8, 2008); *see also See 800–Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F.Supp. 128, 134 (S.D.N.Y.1994). ("Courts routinely transfer cases when the principal events occurred and the principal witnesses are located in another district.") Here, it is beyond dispute that all the operative facts occurred in the Northern District at Oneida, where the Decedent was killed while under the Defendants' supervision. It is therefore beyond dispute that this factor also weighs in favor of transfer.

---

[7] Convenience to Plaintiffs' counsel is not relevant to this factor. *See* Wright & Miller, § 3850 (collecting cases).

Plaintiffs argue that under *Merkur v. Int'l, Inc.* No. 00 CV 5843 (ILG), 2001 WL 477268, (E.D.N.Y. Mar. 30, 2001), "this factor does not strongly weigh in favor of transfer" because Oneida "closed down in 2011." (ECF No. 27 at 24). That case, however, is largely inapposite. In *Merkur*, the plaintiff alleged that the Defendant, a hotel chain had negligently caused her injuries by performing tile work in a hotel lobby located in Puerto Rico without warning signs or other safety precautions. *Merkur* at *1. The Defendant moved to transfer to Puerto Rico, and in considering that motion the Court conflated the "locus of operative facts" factor and the "access to proof" factor when addressing them both in a single paragraph. *Id.* at 3. In concluding that those two factors did not "weigh strongly" in favor of transfer, the court emphasized that the tile work had since been completed—altering the alleged dangerous condition –and that documentary evidence, such as photographs, could resolve the underlying issue of negligence. Here, that reasoning is less applicable. Plaintiffs' suit does not arise from a physicality that has been changed; rather, as a claim couched in the deliberate indifference of the individual defendants, it turns on entirely different factors. In any event, the Court finds that any mitigation against transfer resulting from the closure is relevant only to the "location of relevant documents" and not the instant factor. The locus of operative facts took place entirely in the Northern district and this factor therefore weighs in favor of transfer.

### 5. *Remaining Factors*

The remaining factors on balance do not weigh either against or for transfer. Where, as here, the movant presents no evidence of witness's willingness to testify or otherwise addresses the courts' ability to compel testimony, that factor is irrelevant. *See, e.g., Swack*, at *7 (citing *Brozoski v. Pfizer, Inc.*, No. 00–CV–4215, 2001 WL 618981, at *4 (S .D.N.Y. June 6,

2001). The same holds true of the relative means of the parties, on which neither Plaintiffs nor Defendants provided any evidence. (*See id. Quan v. Computer Scis. Corp.,* Nos. CV 06–3927(CBA)(JO), CV 06–5100(CBA)(JO), 2008 WL 89679, at *7 (E.D.N.Y. Jan. 7, 2008) ("Absent any information demonstrating that the plaintiffs would be financially prejudiced by having to litigate in California, this factor adds nothing to my analysis."); *Neil Bros. Ltd. v. World Wide Lines, Inc.,* 425 F.Supp.2d 325, 331 (E.D.N.Y.2006) (Any party claiming financial hardship must provide supporting evidence.) Finally, while the location of relevant documents and ease of access to sources of proof likely weigh somewhat towards transfer, it does so minimally considering that technological advancements have made this factor all but obsolete. *See DiStefano v. Carozzi N. Am., Inc.,* No. 98 Civ. 7137(SJ), 2002 WL 31640476, at *4 (E.D.N.Y. Nov. 16, 2002) ("[M]odern photocopying technology deprives this issue of practical or legal weight.") (citations omitted).

In summary, this case arises only from events that took place in the Northern District. It arrived in the Eastern District through removal by Defendants, after Plaintiffs, only one of whom resides in this district, filed two related suits, one in Kings County and one in the Court of Claims within the Northern District. The overwhelming majority of both witnesses and parties reside in the Northern District, and no factor weighs strongly against transfer to that forum. Under these circumstances transfer is warranted in the interest of justice, for efficiency's sake, and for the convenience of nearly all involved.

## III. CONCLUSION

For the above reasons, **it is ORDERED that:**

**(i)**     Plaintiffs' Motion to Remand is **DENIED** (ECF No. 26);

**(ii)**    Defendants' Motion to Transfer is **GRANTED** (ECF No. 23); and

**(iii)**   The Clerk of the Court is hereby directed to transfer this action to the Clerk of the

Court for the United States District Court for the Northern District of New York.

/s/ Sandra L. Townes

SANDRA L. TOWNES
United States District Judge

Dated: June 28 , 2017
Brooklyn, New York